```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                                 :
FERUZE BORICI,                                                   :
                                                                 :
                              Plaintiff,                         :
                                                                 :     21 Civ. 1826 (JPC)
              -v-                                                :
                                                                 :     OPINION AND ORDER
                                                                 :
ABM INDUSTRY GROUPS, LLC and 32 BJ SEIU,                         :
                                                                 :
                              Defendants.                        :
                                                                 :
-----------------------------------------------------------------X
```

JOHN P. CRONAN, United States District Judge:

      Plaintiff Feruze Borici brings this action pursuant to section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, against Defendants Service Employees International Union, Local 32BJ (the "Union") and ABM Industry Groups, LLC ("ABM"), alleging (1) the Union's breach of the duty of fair representation and (2) ABM's breach of the collective bargaining agreement. Borici's claims are based on the Union's alleged failure to arbitrate her complaints filed against ABM for assignment of excessive workload in violation of the collective bargaining agreement. The Union and ABM jointly move to dismiss both claims, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim. For the reasons stated below, the Court grants the Defendants' motion to dismiss and dismisses the case with prejudice.

## I. Background

**A. Factual Allegations**

      The following facts, which are assumed true for purposes of this Opinion and Order, are taken from the Complaint and from the documents incorporated therein by reference. Dkt. 1 ("Compl."); *see Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) (noting that

at the motion to dismiss stage, a court may consider "any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference" as well as any documents "integral" to the complaint, *i.e.*, "where the complaint 'relies heavily upon [the document's] terms and effect'" (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995))).

From 2012 to 2019, Borici worked as a custodian for ABM, a commercial cleaning contractor. Compl. ¶¶ 9, 11-12. Borici was assigned to an office building located at 300 Madison Avenue in Manhattan (the "Building"), where she worked the weekday night shift from 5:30 p.m. to 12:45 a.m. *Id.* ¶¶ 9-10, 17. Her duties included cleaning the offices, the hallways, and the interior floor windows, and collecting garbage from the offices and the kitchens. *Id.* ¶ 19. From 2015 to 2018, Borici was assigned to clean floors 32 and C-2 of the Building. *Id.* ¶ 20. In September 2018, Borici was no longer assigned to clean floor C-2 due to construction. *Id.* ¶ 21. In January 2019, Borici was reassigned to clean floors 27 and 33. *Id.* ¶ 22. During her employment with ABM, Borici was represented by the Union pursuant to a collective bargaining agreement between ABM and the Union dated January 1, 2016 ("CBA"). *Id.* ¶¶ 14, 16, 23. The CBA covered "the wages, hours, workload, and other employment terms and conditions" for certain ABM employees, including Borici. *Id.* ¶ 15.

Borici contends that she was consistently assigned excessive workload in violation of the CBA. Specifically, Borici discovered during her review of the Building's floor plans that the square footage that she was assigned to clean during her shift for the relevant time period exceeded 32,000 square feet, which, according to Borici, violated the CBA. *Id.* ¶¶ 23-26. Based on this belief, Borici filed six complaints with the Union alleging ABM's assignment of excessive

workload.[1]  *Id.* ¶¶ 29-35.  Sometime in May 2019, the Union notified Borici that her second complaint, which was filed on April 19, 2018, would be taken to arbitration.  *Id.* ¶ 36.  No arbitration, however, ever occurred with respect to any of Borici's complaints against ABM for excessive workload.  *Id.* ¶ 37.

On October 5, 2020, the Union sent letters to Borici regarding her April 19, 2018 and August 14, 2018 workload complaints against ABM.  Dkt. 17-1 ("Weinberg Declaration"), Exhs. G, H; Compl. ¶ 38.  In the letters, the Union informed Borici that it "is closing your Workload claim(s) against [ABM] because the COVID-19 pandemic has rendered it moot and/or no longer feasible for the Union to pursue."  Weinberg Declaration, Exhs. G, H; Compl. ¶ 38.  The letters explained that "even if the Union were to successfully pursue your claim, the prospective remedy sought is no longer available due to the pandemic and the resulting changes at your worksite, and/or it is no longer feasible for the Union to pursue in light of the case load backlog and the limited and diminished level of resources available to us due to the pandemic."  Weinberg Declaration, Exhs. G, H; Compl. ¶ 38.  The Union's letters further provided that "if the condition you complained of is not fixed once conditions at your worksite return to pre-pandemic levels, the Union reserves its right to reopen this claim or may file a new complaint on your behalf."  Weinberg Declaration, Exhs. G, H.

**B.  Procedural History**

On March 2, 2021, Borici commenced this action, alleging breach of the duty of fair representation against the Union and breach of the CBA against ABM.  Compl. ¶¶ 40-45.  Borici

---

[1] Borici filed complaints on July 12, 2016 (Complaint number 11848-16); April 19, 2018 (Complaint number 39129-18); August 14, 2018 (Complaint number 43863-18); January 2, 2019 (Complaint number 49584-19); March 22, 2019 (Complaint number 53195-19); and November 4, 2019 (Complaint number 62581-19).  Compl. ¶¶ 29-35.

argues that the Union breached its duty of fair representation by failing to arbitrate her complaints for excessive workload against ABM. *Id.* ¶¶ 40-42. Borici argues that ABM breached the CBA by assigning her cleaning areas in excess of 32,000 square feet in violation of the CBA. *Id.* ¶¶ 43-45. On April 30, 2021, Defendants jointly moved to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. 17 ("Motion"). Borici filed an opposition to Defendants' motion on May 14, 2021, Dkt. 20 ("Opposition"), and Defendants filed a reply on May 21, 2021, Dkt. 21. At the parties' request, the Court stayed discovery pending resolution of the motion to dismiss. Dkt. 25.

## II. Legal Standard

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although the Court must "accept[] as true the factual allegations in the complaint and draw[] all inferences in the plaintiff's favor," *Biro v. Conde Nast*, 807 F.3d 541, 544 (2d Cir. 2015), it need not "accept as true legal conclusions couched as factual allegations," *Lafaro v. N.Y. Cardiothoracic Grp. PLLC*, 570 F.3d 471, 475-76 (2d Cir. 2009).

## III. Discussion

### A. Hybrid Section 301/Duty of Fair Representation Claim

As an initial matter, Defendants contend that the Complaint presents a "hybrid" claim for breach of the CBA/duty of fair representation. Motion at 5-6. The Court agrees. Before a union-

represented employee may bring a suit against her employer for breach of a collective bargaining agreement, she ordinarily must "attempt to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement." *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 163 (1983).  This exhaustion requirement, however, is excused "if [the] plaintiff can show that the failure to arbitrate or the unsuccessful result in that forum was due to the Union's wrongful conduct, that is, a breach of its duty to represent [the] plaintiff fairly." *Young v. U.S. Postal Serv.*, 907 F.2d 305, 307 (2d Cir. 1990).  In such cases, a plaintiff may bring what the Supreme Court in *DelCostello* has referred to as a "hybrid § 301/fair representation claim" against the employer for breach of the collective bargaining agreement under section 301 of the LMRA and against the union for "breach of the union's duty of fair representation, which is implied under the scheme of the National Labor Relations Act."  462 U.S. at 164; *see also Carrion v. Enter. Ass'n, Metal Trades Branch Local Union 638*, 227 F.3d 29, 33 (2d Cir. 2000) ("Such suit, which alleges that the employer breached the CBA and that the union breached its duty of fair representation, is known as a hybrid § 301/fair representation claim.").

To prevail on a hybrid section 301/duty of fair representation claim, "a plaintiff must prove both (1) that the employer breached a collective bargaining agreement and (2) that the union breached its duty of fair representation vis-a-vis the union members." *White v. White Rose Food, a Div. of DiGiorgio Corp.*, 237 F.3d 174, 178 (2d Cir. 2001).  Failure to establish that the union breached its duty of fair representation precludes the claim against the employer. *See DelCostello*, 462 U.S. at 164-65 ("To prevail against either the company or the Union, . . . [employee-plaintiffs] must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the Union." (internal quotation marks omitted)); *White*, 237 F.3d at 179 ("The plaintiff may sue the union or the employer, or both, but must allege violations

on the part of both."); *Young*, 907 F.2d at 307 ("[T]he Union's breach is a prerequisite to consideration of the merits of plaintiff's claim against her former employer for improper discharge."); *Stephens v. 1199 SEIU, AFL-CIO*, 45 F. Supp. 3d 284, 292 (E.D.N.Y. 2014) ("[E]ven if the evidence is only inadequate to prove a breach by one and not the other, the claim against *both* the union and the employer cannot prevail.").

Here, Borici filed six complaints with the Union alleging claims of excessive workload against ABM. Although Borici has not exhausted the remedies provided under the CBA by pursuing arbitration against ABM or was otherwise unsuccessful, she contends that the Union's failure to arbitrate her claims constituted wrongful conduct amounting to a breach of its duty to represent her fairly in the grievance process. Accordingly, Borici's claims against the Union for breach of the duty of fair representation and against ABM for breach of the CBA form a "hybrid" claim for which she must sufficiently allege breaches by both the Union and ABM in order to defeat Defendants' motion to dismiss.

## B. Breach of Duty of Fair Representation

A union "has a duty to represent fairly all employees subject to the collective bargaining agreement." *Spellacy v. Airline Pilots Ass'n-Int'l*, 156 F.3d 120, 126 (2d Cir. 1998). To prove that a union has breached its duty of fair representation, a plaintiff must plead that (1) the union's conduct was "arbitrary, discriminatory, or in bad faith," and (2) there was "a causal connection" between the union's wrongful conduct and the member's injuries. *White*, 237 F.3d at 179. A union's actions are "arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational." *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991) (internal quotation marks and citation omitted). A union's acts are discriminatory when "substantial evidence" indicates that

it engaged in discrimination that was "intentional, severe, and unrelated to legitimate union objectives." *Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Emps. of Am. v. Lockridge*, 403 U.S. 274, 301 (1971).  Bad faith, which "encompasses fraud, dishonesty, and other intentionally misleading conduct," requires proof that the union acted with "an improper intent, purpose, or motive."  *Spellacy*, 156 F.3d at 126; *see also Sim v. N.Y. Mailers' Union No. 6*, 166 F.3d 465, 472 (2d Cir. 1999) ("Bad faith requires a showing of fraudulent, deceitful, or dishonest action.").

Courts generally have recognized that "[a]ny substantive examination of a union's performance . . . must be highly deferential, recognizing the wide latitude that negotiators need for the effective performance of their bargaining responsibilities." *O'Neill*, 499 U.S. at 78.  "This 'wide range of reasonableness' gives the union room to make discretionary decisions and choices, even if those judgments are ultimately wrong." *White*, 237 F.3d at 179.  As such, tactical errors or even negligence are insufficient to show a breach of the duty of fair representation. *Barr v. United Parcel Serv., Inc.*, 868 F.2d 36, 43 (2d Cir. 1989).  Likewise, "[a] union's failure or refusal to pursue a grievance on its own does not constitute a breach of the duty of fair representation." *Vera v. Saks & Co.*, 424 F. Supp. 2d 694, 706 (S.D.N.Y. 2006); *Tarde v. Good Samaritan Hosp.*, 360 F. Supp. 2d 552, 563 (S.D.N.Y. 2005) ("[R]efusing to pursue a grievance does not automatically constitute a breach of the duty of fair representation.").

Borici does not allege any facts in the Complaint to suggest, even remotely, that the Union's failure to arbitrate her workload complaints against ABM was arbitrary, discriminatory, or in bad faith.  And while not determinative, the terms "arbitrary," "discriminatory," and "bad faith" are not present anywhere in the Complaint.  The only allegations that Borici makes regarding the Union's actions are that "[n]o arbitration was conducted between [Borici, ABM, and the Union], with the meetings frequently being rescheduled and postponed," Compl. ¶ 37, and that

7

Borici received a letter from the Union on October 5, 2020 advising her that the Union "will no longer be pursuing arbitration against [ABM] because 'the COVID-19 pandemic has rendered it moot and/or no longer feasible for the Union to pursue,'" *id.* ¶ 38. These allegations are not sufficient to state a claim against the Union for breach of the duty of fair representation.

"It is well-established that a union member does not have an absolute right to have a grievance taken to arbitration." *Carrion v. Local 32B-32J SEIU, AFL-CIO*, No. 03 Civ. 1896 (THK), 2005 WL 659321, at *6 (S.D.N.Y. Mar. 21, 2005); *Vaca v. Sipes*, 386 U.S. 171, 191 (1967) ("Though we accept the proposition that a union may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion, we do not agree that the individual employee has an absolutely right to have his grievance taken to arbitration regardless of the provisions of the applicable collective bargaining agreement."). As such, the "[f]ailure to take a member's grievance to arbitration is not by itself enough to show that the union's actions were 'arbitrary, discriminatory, or in bad faith.'" *Dillard v. SEIU Local 32BJ*, No. 15 Civ. 4132 (CM), 2015 WL 6913944, at *5 (S.D.N.Y. Nov. 6, 2015); *see also Cano v. SEIU Local 32BJ*, No. 19 Civ. 8810 (PAE) (KHP), 2021 WL 4480274, at *13 (S.D.N.Y. Sept. 30, 2021) (holding that the plaintiff's allegation that the union opted not to take his claims to arbitration did not make out an actionable claim because the plaintiff failed to "plead facts plausibly suggesting discriminatory, arbitrary, or bath faith conduct"); *Lapir v. Maimonides Med. Ctr.*, 750 F. Supp. 1171, 1179 (E.D.N.Y. 1990) ("Absent a showing of arbitrary conduct or bad faith, a court should not second guess the union's decision not to pursue [the employee's] grievance to arbitration.").

Moreover, with respect to two of the complaints—the complaints filed on April 19, 2018 and August 14, 2018—the Court finds that the Union's October 5, 2020 letters provided reasonable, nondiscriminatory reasons for closing her complaints. The Union's letters stated that

the Union was "closing [Borici's] Workload claim(s) against [ABM] because the COVID-19 pandemic has rendered it moot and/or no longer feasible for the Union to pursue" and because "the prospective remedy sought is no longer available due to the pandemic and the resulting changes at [Borici's] worksite." Weinberg Declaration, Exhs. G, H; Compl. ¶ 38. The Union cited "case load backlog" and "the limited and diminished level of resources available to [the Union] due to the pandemic" as additional reasons for why it was necessary for the Union to close Borici's complaints against ABM. Weinberg Declaration, Exhs. G, H; Compl. ¶ 38. The letters further provided that to the extent the condition raised in Borici's complaints "is not fixed once conditions at [Borici's] worksite return to pre-pandemic levels, the Union reserves its right to reopen this claim or may file a new complaint on [Borici's] behalf." Weinberg Declaration, Exhs. G, H. Nothing in the Union's letters suggest that the Union's decisions to close her 2018 complaints against ABM were arbitrary, discriminatory, or made in bad faith. To the contrary, the Union cited the effects of the COVID-19 pandemic, which has understandably impacted workplace conditions, including Borici's, and explained that although the Union would be closing Borici's 2018 complaints due to resource constraints, the Union may reopen Borici's complaints or file a new complaint on her behalf if her workload did not improve once worksite conditions returned to pre-pandemic levels.

In opposition to Defendants' motion to dismiss, Borici conclusorily argues that she "has established a pattern of the Union not taking multiple grievances relating to her claims of excessive and unreasonable workload to arbitration over the course of three years, thus handling her claims in a 'perfunctory fashion.'" Opposition at 6. Borici provides no legal authority to support her argument that the Union's "pattern" of not arbitrating her grievances, alone, is sufficient to show that the Union handled her claims in a "perfunctory fashion" and, thereby, breached its duty of fair

9

representation. As discussed above, "a union member does not have an absolute right to have a grievance taken to arbitration." *Carrion*, 2005 WL 659321, at *6. And again, Borici does not allege any facts to allow for the conclusion that the Union's decisions not to arbitrate her workload complaints against ABM were in any way arbitrary, discriminatory, or in bad faith. In fact, as Defendants point out, "the entire Complaint consists of a recitation of Borici's various work assignments and her repetitive grievances concerning those work assignments," but "Borici makes no allegations concerning the Union's efforts to investigate and adjust her grievances, nor to allege the resolution of those grievances other than [her 2018 complaints] that were closed by letters of October 5, 2020." Motion at 16-17. Accordingly, Borici has not sufficiently alleged a claim against the Union for breach of the duty of fair representation.

Since the Court concludes that Borici has not adequately pled a breach of the Union's duty of fair representation, the Court does not reach the question of whether ABM breached the CBA.[2] *See White*, 237 F.3d at 183 ("[P]laintiffs' failure to establish their [duty of fair representation] claim against the union means that their hybrid § 301/[duty of fair representation] claim against [the employer] necessarily fails as well."); *Acosta v. Potter*, 410 F. Supp. 2d 298, 309 (S.D.N.Y. 2006) ("Because a union's breach of the duty of fair representation 'is a prerequisite to consideration of the merits of plaintiff's claim against' an employer for breach of a CBA, courts presented with hybrid claims need not reach the question of whether the employer violated the CBA unless the union has acted arbitrarily, in bad faith, or discriminatorily." (quoting *Young*, 907

---

[2] Borici admits that four of the six complaints that she filed with the Union—the complaints filed on July 12, 2016, January 2, 2019, March 22, 2019, and November 4, 2019—are time-barred. *See* Opposition at 3 ("[F]our of the six of Plaintiff's complaints made to the union are outside the six-month statute of limitations period."). Nevertheless, Borici argues that the Court should consider the four time-barred complaints under the continuing violation doctrine. *Id.* Because the Court finds that Borici has not stated a claim for breach of the duty of fair representation against the Union, the Court need not resolve whether the continuing violation doctrine applies.

F.2d at 307)).

## IV. Conclusion

For the foregoing reasons, Defendants' motion to dismiss is granted and this action is dismissed with prejudice. The Clerk of Court is respectfully directed to terminate the motion pending on Docket 16 and close this case.

SO ORDERED.

Dated: December 7, 2021
New York, New York

_____
JOHN P. CRONAN
United States District Judge